IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE S. C., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 21-CV-494-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Jamie S. C. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 50-year-old female, applied for Title II disability insurance benefits on July 24, 2019, alleging a disability onset date of July 30, 2014. R. 15, 164-165, 177. Plaintiff claimed she was unable to work due to conditions including L4-S1 spinal fusion, permanent nerve damage in left leg, spinal cord stimulator implant, low back pain, bursitis in both hips, and around the clock opioids for pain. R. 181. Plaintiff's claim for benefits was denied initially on January 29, 2020, and on reconsideration on May 20, 2020. R. 68-104. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on March 23, 2021. R. 33-67. The ALJ issued a decision on April 22, 2021, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 15-28. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2019. R. 18. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period

from her alleged onset date of July 30, 2014, through her date last insured. *Id.* At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease, lumbar radiculopathy, bursitis to the bilateral hips, and obesity. *Id.* The ALJ found Plaintiff's headaches and depression to be non-severe. R. 19. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 19-20. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 20.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of sedentary work as follows:

> The claimant was able to lift, carry, push, or pull up to ten pounds frequently and twenty pounds occasionally. The claimant was able to sit up to six hours in an eight-hour workday. The claimant was able to stand and/or walk up to two hours in an eight-hour workday. The claimant's job should not have required walking more than thirty minutes consecutively. The claimant was able to occasionally stoop. The claimant's job should not have involved kneeling, crouching, or crawling. The claimant's job should not have involved climbing ramps, stairs, ladders, ropes, or scaffolds.

R. 20-21. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 26. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary jobs using Plaintiff's acquired transferable work skills, such as Appointment Clerk. R. 27-28. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 28. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. R. 27. The ALJ further concluded that, although Plaintiff's additional limitations did not allow her to perform the full range of sedentary work, considering Plaintiff's

4

age, education, and transferable work skills, a finding of "not disabled" was appropriate under the Medical-Vocational Rules 201.22 and 201.15. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled through the date last insured.

### III. Issues

Plaintiff raises four points of error in her challenge to the denial of benefits: (1) the ALJ's consistency analysis was flawed; (2) the ALJ's RFC regarding Plaintiff's sitting ability was improper; (3) the ALJ improperly evaluated the medical source opinion evidence from the state agency reviewers; and (4) the ALJ had no valid opinion as to Plaintiff's physical limitations, resulting in a deficient RFC. ECF No. 12.

### IV. Analysis

#### A. ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's

5

medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3).[1]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 21-22. As support, the ALJ pointed to the August 8, 2017, physical examination of Richard Drake, D.O., which showed Plaintiff's range of motion to her hip and knee did not reproduce pain, that she had no lower extremity motor deficits, that her sensation was intact to soft touch throughout, and that her gait was non-antalgic. R. 22 (citing R. 975-977). After summarizing Plaintiff's medical history, the ALJ concluded that the longitudinal record reflected that Plaintiff had a normal range of motion to her musculoskeletal system, had normal strength to her extremities, and was negative for the straight leg raising the sitting position bilaterally. R. 26 (citing R. 269-270, 272, 292, 296-298, 913-915, 1030-1034, 1055-1059, 1112-1117, 1308-1314,

---

[1] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

1340-1346). The ALJ further found that the longitudinal evidence showed Plaintiff had no motor or sensory deficits, could perform a tandem gait without substantial difficulty, and did not require use of an assistive device. *Id.* (citing R. 269-270, 296-298, 418-419, 818-821, 961-963, 975-977, 987-990).

Plaintiff alleges the ALJ's analysis was insufficient, because (1) the ALJ failed to acknowledge numerous records that demonstrated greater physical limitations in support of her subjective statements; (2) the ALJ consistency discussion cited the medical record in a misleading way; and (3) the ALJ failed to expressly compare Plaintiff's testimony/statements and the medical record. ECF No. 12 at 4-19.

The undersigned finds that the ALJ's consistency analysis was proper. First, Plaintiff argues that the ALJ failed to note from the records: (1) a "botched" lumbar spine surgery in August 2015, which required an immediate second surgery to correct the initial surgery, and which Plaintiff argues "may have caused the subsequent failure to improve even after the second surgery," ECF No. 12 at 6 (citing R. 277-278, 282-283, 287-288); (2) an October 2015 record showing Plaintiff was experiencing shooting left leg pain less than two months after her August 2015 lumbar surgeries (R. 276); (3) a June 2016 post-myelogram lumbar CT scan showing that her lumbar screws were loosening (R. 267-268); (4) records indicating Plaintiff's left leg pain returned shortly after her October 2016 lumbar surgery (R. 969, 1026-1029); (5) A December 2016 EMG nerve conduction test that showed a chronic left L4-S1 radiculopathy (R. 972-974); (6) documentation of radiculopathy and need for a spinal cord stimulator in 2017 and early 2018 (R. 981-986, 1044-1048); (7) records showing her spinal cord stimulator did not provide complete pain relief (R. 1183-1191, 1204, 1216-1221); and (8) records showing treatment history for hip bursitis in 2018 and 2019 (R. 1229-1244, 1251-1268, 1282-1294).

The undersigned identifies no error from the ALJ's failure to cite or discuss these specific records. The ALJ is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted). As the ALJ explained, the longitudinal evidence showed that, while Plaintiff had "some difficulties," she could perform work within the sedentary RFC. R. 26. Upon exhaustive review, the undersigned finds the additional records Plaintiff cites do not demonstrate greater limitations than the ALJ found, and they do not conclusively support all her subjective complaints of pain. The ALJ found both lumbar radiculopathy and bilateral hip bursitis to be severe impairments, and she discussed numerous records in which Plaintiff complained of back, leg, and hip pain. R. 18, 21-25. Given the voluminous record in this case, the ALJ could not reasonably summarize every medical record, and the ALJ's analysis is not indicative of impermissible "cherry picking."

Second, plaintiff takes issue with the ALJ's consistency analysis for misleadingly citing evidence in support of the RFC and against Plaintiff's complaints. *See* R. 26. Plaintiff analyzes multiple citations from the ALJ decision, arguing they are supportive of Plaintiff's complaints and unsupportive of the ALJ's findings regarding her physical limitations. *See* ECF No. 12 at 12-19. However, the records the ALJ cites do provide support for the ALJ's conclusions, and the fact that the records also cite some negative findings or address complaints unrelated to back and leg pain do not undermine the ALJ's conclusions.

Finally, Plaintiff contends the ALJ violated SSR 16-3p by failing to expressly compare Plaintiff's testimony/statements and the medical records. *See* SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."). Plaintiff's

argument is unavailing. The ALJ summarized Plaintiff's testimony at the March 23, 2021, hearing, including her complaints regarding the severity of pain in her legs, hips, and lower back. R. 21. The ALJ discussed Plaintiff's testimony regarding her daily activities, medication, and physical limitations. *Id.* The ALJ then found this testimony inconsistent with the examination of Dr. Drake in August 2017, which showed her range of motion to her hip and knee did not reproduce pain, she had no lower extremity motor deficits, her sensation was intact to soft touch throughout, and her gait was non-antalgic. R. 21-22 (citing R. 995-997). The ALJ then reviewed the medical record in support of the RFC. R. 22-26. The undersigned finds the ALJ's consistency discussion satisfies SSR 16-3p. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> **B.** **ALJ Properly Articulated the RFC and Considered Plaintiff's Sitting Ability and Alleged Need to Nap**

Plaintiff argues the ALJ committed reversible error in his RFC assessment of Plaintiff's ability to sit for periods of time and her alleged need to nap. Specifically, Plaintiff alleges the ALJ did not explain why he found Plaintiff was able to sit for six hours out of an eight-hour workday, as stated in the RFC, which necessarily includes the ability to sit for two-hour intervals. *See* SSR 96-9p (explaining that, "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals"). Plaintiff argues that, given her testimony that she could sit for only 10-15 minutes at a time before having to get up and walk around, and that she needed to nap two to three times a day for one to two hours at a time, the ALJ's RFC was unsupported in the record and contradicted by Plaintiff's testimony.

Plaintiff's argument is unpersuasive. The ALJ noted Plaintiff's testimony that she could sit in a chair for only ten to fifteen minutes before experiencing back pain, and that she napped two to three times per day. R. 21. The ALJ found Plaintiff's testimony and statements regarding the intensity, persistence, and limiting effects of her symptoms to be not entirely consistent with the medical record. As explained above in Part IV.A, the undersigned found no error in the ALJ's consistency analysis. Plaintiff points to no part of the objective record supporting these subjective complaints. By contrast, the ALJ referred to records indicating Plaintiff had normal ranges of motion to her musculoskeletal system, normal strength, and no motor or sensory deficits. R. 26. The state agency reviewers also opined that Plaintiff could sit for six hours in an eight-hour workday, and the ALJ found their opinions partially persuasive. R. 26, 77, 92.

In sum, the ALJ did explain the basis for the sitting limitation. Moreover, in contrast to Plaintiff's alleged need to nap throughout the day, the ALJ noted that Plaintiff reported to her pain management nurse in December 2019 that she was tolerating her medications well with no side effects. R. 25 (citing R. 1340). Again, Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

### C.  ALJ's Analysis of Medical Source Opinion Evidence Regarding Sitting Ability Was Legally Sufficient

Plaintiff argues the ALJ committed reversible error by improperly evaluating opinions from the state agency medical reviewers. *See* R. 68-97 (agency reviewer opinions). For claims filed after March 27, 2017, such as Plaintiff's claims, 20 C.F.R. §§ 404.1520c and 416.920c provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

those from your medical sources." 20 C.F.R. § 404.1520c(a).[2] Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how she considered those two factors. 20 C.F.R. § 404.1520c(b)(2).[3] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(2)-(c).

In this case, agency reviewer William Oehlert, M.D., gave an initial opinion in January 2020, and reviewer David Coffman, M.D. gave a reconsideration opinion in May 2020. Dr. Oehlert opined that Plaintiff could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk (with normal breaks) for a total of four hours; sit (with normal breaks) for a total of about six hours in an eight-hour day; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds. R. 77-78. On reconsideration, Dr. Coffman gave the same opinion regarding lifting/carrying ability, and he opined Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; frequently climb

---

[2] In adopting the revised rules, the Social Security Administration explained: "To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5854, 2017 WL 168819 (Jan. 18, 2017).

[3] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

ramp/stairs, kneel, crouch, and crawl; occasionally stoop; and never climb ladders/ropes/scaffolds. R. 92-93.

The ALJ assessed the opinions of both agency physicians. The ALJ found the opinions "partially persuasive to the extent they are consistent with the above [RFC]." R. 26. The ALJ noted that, "for example," the finding that Plaintiff was able to lift, carry, push, or pull up to ten pounds was supported by the April 19, 2016, examination of Clinton Baird, M.D., that showed she had full strength to her upper and lower extremities throughout. *Id.* (citing R. 269-270). The ALJ further noted that the finding Plaintiff could lift, carry, push, or pull up to twenty pounds occasionally was consistent with the September 21, 2018, examination of Sarah Elneser, D.O., that showed she had a normal range of motion to her musculoskeletal system. *Id.* (citing R. 913-915). Ultimately, the ALJ's RFC was more restrictive than either physician's opinion in terms of Plaintiff's ability to stand/walk and some postural limitations. R. 20-21.

Plaintiff argues the ALJ's assessment of the agency opinions was improper for two reasons. First, she argues the agency reviewers' consideration of the medical record was lacking, because the reviewers failed to note records from the period between November 2016 and September 2019, apart from one September 2018 record noting Plaintiff had a cough. R. 78-79. Plaintiff's argument fails. It is the ALJ's, not the agency physician's, duty to assess Plaintiff's RFC. *See* 20 C.F.R. § 404.1546(c) (stating that it is the ALJ's responsibility for assessing RFC at the ALJ hearing level); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record"); *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (explaining that "[t]he final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence"). The ALJ was required to consider the agency reviewers' opinions, but she also

12

considered the entirety of the record. Therefore, any failure by the agency reviewers in summarizing the record did not automatically translate to a deficiency in the ALJ's RFC, as Plaintiff appears to suggest. To the contrary, the ALJ found the agency opinions only partially persuasive and did not accept them in their entirety, which indicates the ALJ did not rely exclusively on those opinions and considered other records in determining the RFC. In addition, the agency reviewers' summary of the medical record, although not complete, is not incorrect or clearly selective to support their opinions. *Cf. Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (finding ALJ's "wholesale" reliance on agency opinions reversible error, where one agency reviewer incorrectly stated claimant's treatment history and ignored evidence of serious functional limitations from consultative exam, and the other reviewer's conclusion was only a "check-off form" with a brief explanation).

Second, Plaintiff contends the ALJ failed to follow the regulations in evaluating the agency reviewer opinions. She argues the ALJ improperly concluded the opinions were persuasive to the extent they were consistent with the ALJ's RFC, rather than consistent with the evidence, as required by the regulations. *See* 20 C.F.R. § 404.1520c. She further argues that the two records the ALJ cites – the April 2016 examination of Dr. Baird and the September 2016 examination of Dr. Elneser – are inadequate support for the ALJ's persuasiveness findings, particularly with respect to Plaintiff's sitting ability. Plaintiff argues the ALJ should have set out which specific parts of the agency opinions were persuasive.

The undersigned finds that the ALJ's analysis of the agency opinions was legally sufficient. The ALJ adequately identified records that she found consistent with the agency opinions regarding her lift/carry/push/pull ability. While the ALJ's articulation of her analysis could have been clearer, the undersigned can discern her reasoning for the six-hour sitting limitation based on

13

the records cited and her analysis given throughout the decision. In particular, in the paragraph following the ALJ's evaluation of the agency opinions, the ALJ cites numerous records in support of the RFC, including records showing that Plaintiff had normal range of motion to her musculoskeletal system, normal strength to her extremities, negative straight-leg raise testing, no motor or sensory deficits, ability to perform tandem gait without substantial difficulty, and no need for use of an assistive device. R. 26 (citing R. 269-270, 272, 292, 296-298, 418-419, 818-821, 913-915, 961-963, 975-977, 987-990, 1030-1034, 1055-1059, 1112-1117, 1308-1314, 1340-1346). In conjunction with the ALJ's evaluation of the agency opinions, the undersigned can follow her reasoning for concluding that Plaintiff could sit for six hours in a workday, consistent with the agency opinions. *See Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (explaining that, under traditional administrative law principles, a reviewing court must uphold even "a decision of less than ideal clarity if the agency's path may reasonably be discerned") (cleaned up).

The ALJ thoroughly discussed the medical evidence and explained the RFC. R. 21-26. Plaintiff offers no evidence to suggest that the ALJ would alter her assessment of the agency reviewer opinions if her case were remanded for reconsideration of those opinions. *See Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013) ("No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest for a perfect opinion unless there is reason to believe that the remand might lead to a different result") (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

    **D.**    **ALJ Adequately Developed the Record Regarding Plaintiff's Sitting Ability**

Plaintiff contends the ALJ failed to develop the record regarding Plaintiff's ability to sit for six hours out of an eight-hour workday for two-hour intervals. Plaintiff argues that, because the state agency reviewer opinions did not constitute substantial evidence supporting Plaintiff's

sitting capability, the ALJ was required to obtain another medical opinion regarding that RFC limitation.

The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

The undersigned finds the ALJ adequately developed the record. The undersigned rejects Plaintiff's arguments that the ALJ lacked substantial evidence on which to base an RFC. As explained above, the ALJ considered Plaintiff's ability to sit and stand/walk, and she relied in part on the agency reviewers' opinions in establishing the physical RFC. The ALJ noted many of Plaintiff's medical records, which showed that she had difficulties with lower back and radiating leg pain, but repeatedly demonstrated normal range of motion to her musculoskeletal system, normal strength and sensation, and negative straight leg raise testing. R. 22-26.

Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. The ALJ certainly considered Plaintiff's ability to sit for lengths of time, and she had sufficient evidence in the record to give Plaintiff RFC limitations to account for her lower back pain, radiculopathy, and bursitis. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).

The undersigned rejects Plaintiff's contention that the ALJ was obliged to obtain additional opinion evidence to support the RFC limitation of sitting for six hours per day for two-hour periods, simply because the agency reviewers' opinions regarding physical limitations are allegedly deficient. First, the ALJ's RFC need not correspond directly to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category"). Second, as explained above, Plaintiff provides no grounds indicating the ALJ was required to reject the agency reviewers' opinion that Plaintiff could sit for six hours per workday with normal breaks (R. 77, 92).

Plaintiff fails to show any support for functional limitations that exceed the ALJ's RFC. The ALJ appropriately relied on medical evidence showing that Plaintiff's back and leg impairments, while not entirely resolved, were improved after surgery and insertion of the spinal cord stimulator. *Cf. Fleetwood v. Barnhart*, 211 F. App'x 736, 740-41 (10th Cir. 2007) (finding ALJ's RFC findings unsupported by substantial evidence, where ALJ relied only on "check-the-box" forms from state agency medical consultants, and no other medical records supported ALJ's conclusory RFC findings); *Mallory v. Colvin*, No. 13-1426-SAC, 2015 WL 1204991, at *4 (D. Kan. Mar. 17, 2015) (finding ALJ's physical RFC unsupported by substantial evidence where there was "absolutely no medical evidence regarding plaintiff's physical RFC," and ALJ's decision was "devoid of any identifiable discussion explaining how the ALJ arrived at his physical RFC findings based on the evidence, or how the evidence supported his physical RFC findings").

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 2, 2023.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 16th day of February, 2023.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**